IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ALEX J. PEREZ,
    Appellant,

v.                                                                        Criminal No. 2:13-cr-151

UNITED STATES of AMERICA,
    Appellee.

## OPINION AND FINAL ORDER

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(B), appellant Alex J. Perez ("Appellant"), appeals his conviction for Driving Under the Influence of Alcohol, second offense, under the special maritime and territorial jurisdiction of the United States, in violation of the Assimilated Crimes Act, 18 U.S.C. §§ 7 and 13 ("ACA"), assimilating Virginia Code §§18.2-266 and 18.2-270. The Appellant was found guilty following a bench trial before a magistrate judge, which took place on September 4, 2013. After a full review of the record, the Appellant's conviction is AFFIRMED.[1]

### I.    FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of July 12, 2013, Appellant was issued a violation notice for driving under the influence of alcohol while on Naval Station Norfolk (the "Base" or "Station"), a federal military installation located within the special maritime and territorial jurisdiction of the United States in the Eastern District of Virginia. It is not open to the general public, is

---

[1] The court reviews the magistrate judge's findings of fact for clear error. The magistrate judge's conclusions of law are reviewed de novo. See Fed. R. Crim. P. 58(g)(2)(D). Moreover, in reviewing the proceedings below, the court follows the harmless and plain error standards set forth in Federal Rule of Criminal Procedure 52.

1

surrounded by fencing, and the methods of ingress and egress are restricted by gates, manned by armed guards. Only authorized person may access the Base, including: Department of Defense employees, their dependents, military retirees, authorized contractors, individuals who may be sponsored by those with authorized access, and individuals with authorized business on the Base who have obtained a pass from the Pass and Identification Office. Therefore, while public access to the Base is restricted, a limited segment of the population is admitted onto Station grounds with proper authorization.

Preceding Appellant's arrest, a Base officer, Corporal Cooke, observed him wobbling on his moped while he was driving on a Base road (the "Road"), and pulled him over for not wearing a helmet. Cooke noted Appellant's bloodshot eyes and the wafting smell of alcohol. When Appellant admitted to drinking several beers and failed to successfully complete even one of a number of field sobriety tests, he was arrested and transported to the police station where he willingly provided a breath sample. The breath sample was found to have a content of 0.18 grams of alcohol per 210 liters of breath. The Appellant had been previously convicted of DUI on September 25, 2012, in Newport News General District Court.

Subsequent to his arrest, the United States Attorney charged Appellant in a two-count Criminal Information, Doc. 1, with 1) Driving and Operating a Motor Vehicle Under the Influence, in violation of 18 U.S.C. §§ 7 and 13, assimilating Virginia Code §§ 18.2-266 and 18.2-270; and 2) Operating a Motor Vehicle in Violation of License Restrictions, in violation of 18 U.S.C. §§ 7 and 13, assimilating Virginia Code § 18.2-272.

On August 7, 2013, Appellant entered a plea of not guilty, waived his right to a jury, and participated in his bench trial. Following the completion of the government's evidence, Appellant made a Motion for Judgment of Acquittal pursuant to Rule 29 of Criminal Procedure, arguing that the government had failed to prove that the Appellant had operated the vehicle on a

public highway, as required by the Virginia Code. The court heard oral argument, but withheld a finding of guilt or innocence until the parties filed briefs on the issue of whether the phrase "public highway" added an additional element that the government needed to prove in order to secure a conviction for driving under the influence.

On September 4, 2013, after hearing all of the evidence the court found Perez guilty of driving under the influence, sentencing him to a term of forty (40) days in jail, one (1) year of probation, a $500 fine, and a special assessment of twenty-five ($25) dollars. Doc. 16. Appellant appealed the judgment of conviction on September 4, 2013. Doc. 21.

## II. ISSUE ON APPEAL

In this appeal, Appellant argues that the magistrate judge erred in finding that the Base Road on which he was driving is a "public highway" for the purposes of the Virginia statute at issue.[2] He further argues that if this Court were to rule in his favor—that the roads of the Station are not "public highways"—it would not have far-reaching implications for the ACA. Doc. 26.

The magistrate judge analyzed the issue of whether the Road is a "public highway" using traditional principles of statutory interpretation[3] and case law. The court found that given recent

---

[2] In pertinent part, Va. Code § 18.2-266 provides:
    It shall be unlawful for any person to drive or operate any motor vehicle,
    engine or train (i) while such person has a blood alcohol concentration of 0.08
    percent or more by weight by volume or 0.08 grams or more per 210 liters of
    breath as indicated by a chemical test administered as provided in this article . . .
    For purposes of this article, the term "motor vehicle" includes mopeds,
    while operated on the public highways of this Commonwealth.

[3] The magistrate judge looked at the plain meaning of the statute as well as the legislature's intent in drafting the 2006 amendment, noting that the definition appears to have been amended by the General Assembly in response to prior rulings by the Fourth Circuit excluding some roads within federal enclaves from the definition of "highway." See TimMcGlone, Assembly to define where road end for gov't lands, Virginian-Pilot, Feb. 28, 2006, available at http://hamptonroads.com/2006/02/assembly-define-where-road-ends-govt-land, last accessed Aug. 28, 20J3 ("Military police and federal law enforcement officers would again be able to enforce certain traffic violations on or around government property, under a General Assembly proposal designed to redefine the word 'highway.' . . . An appeals court ruled in two cases last year that federal properties and their access roads are not 'public highways' as defined in Virginia law. As a result, federal judges have been forced to dismiss hundreds of traffic tickets, and military police have simply stopped issuing certain tickets. . . . The legislation was requested by the U.S. Attorney's Office for the Eastern District of Virginia "). Doc. 18 at 6 n. 3.

3

Virginia case law and the 2006 Amendment[4] to the definition of "highway" in the relevant Virginia statute that the Road is, indeed, a "public highway." See Doc. 18.

### III. ANALYSIS

Under the ACA, conduct that occurs on land under the special maritime and territorial jurisdiction of the United States which is not expressly prohibited by federal law is governed by the penal laws of the state where the land is located. The ACA assimilates the entire substantive law of the state, which includes laws relating to the definition and scope of an offense and laws addressing the manner in which an offense is to be punished. See, e.g., United States v. King, 824 F.2d 313, 315 (4th Cir.1987).

To begin, this Court notes that it is limited to interpreting, to the best of its ability, the relevant statute defining "highway" as it was enacted and as it has been construed by the courts of Virginia. See United States v. Adams, 426 F.3d 730, 732 (4th Cir. 2005). Prior to 2006, the Virginia Code defined "highway," in relevant part to include "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys." Va. Code § 46.2-100. To determine whether a road constituted a "highway" according to the Code of Virginia, courts looked to the nature of the way or place, and the degree of open access for purposes of vehicular travel by the public, United States v. Smith, 395 F.3d 516, 520 (4th Cir. 2005), relying upon Prillaman v. Commonwealth, 100 S.E.2d 4 (1957), as the seminal case in determining whether a road is a public highway under Virginia law. The Prillaman court proclaimed that "the 'true test' of whether a 'way' is a highway is 'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel." Adams, 426 F.3d at 732 (citing Caplan v. Bogard, 563 S.E.2d 719, 723 (2002) (quoting Prillaman, 100 S.E.2d at 8).

4

In this appeal, the facts are undisputed, and the issue is relatively simple. In his appellate brief, Doc. 26, Appellant insists that he should not have been found guilty because the Road on which he traveled on the Station when stopped for DUI was not a "public highway." Doc. 26 at 7. In support, Appellant points to the fact that the Road was located on an enclosed Base, manned by guards that restricted access for unauthorized personnel. He notes that even when members of the general public are allowed on base for non-military-related activities like playing golf, they are required to stay with their authorized sponsor.

Specifically, Appellant maintains that the Road upon was not "public" even if it was a "highway," and that, in effect, that Appellee should have had to prove that the Road was first a "highway" and then prove that it was "public." Appellant relies upon that fact that the Motor Vehicle Code does not provide a definition of "public highway." As such, Appellant maintains that this Court must instead adopt the test from Prillaman and its progeny in order to give meaning to the term "public." This Court declines to follow Appellant's position, but instead agrees with the magistrate judge's approach in determining that the word "public" does not add an additional element to the requirement that the government prove that a defendant was driving on a "public" highway. See Doc. 18. The Prillaman test has never been used in the manner Appellant suggests, and utilizing it as such would not only require this Court to abandon common sense, but would also require it to ignore the 2006 definitional change that broadened the meaning of "highway" to include federal enclaves within the Commonwealth.

First, this Court notes that the Virginia Code itself equates the term "public highway" with "highway" as the General Assembly itself provided: "[f]or the purpose of this article, 'public highway' means *highway*, road and street . . . ." Va. Code § 33.1-89(A) (emphasis added). Next, in determining the meaning of "public" it is necessary for the Court to read the adjective in context. Appellant would have this Court hold that "public" means the unrestricted

5

community as a whole; however, such a holding would be contrary to case law in not only this circuit, but also other circuits. For example, the Third Circuit held that the word "public" must be read contextually, and while "outside the federal enclave in the Commonwealth of Pennsylvania, 'the public' might mean 'the general public,' on the Army Depot the relevant public must be 'the people who have access to the Army Depot.'" United States v. White, 145 F. App'x 786, No. 05-3326, 2005 WL 2404534, at *3 (3d Cir. Sept. 30, 2005). Likewise, the Ninth Circuit found that although the Puget Sound Naval Shipyard was a restricted access facility, "[t]he relevant public" did not mean the general public, but the "large number of people who use the roadways of the shipyard daily." United States v. Kiliz, 694 F.2d 628, 630 (9th Cir. 1982).

Even before the 2006 definitional expansion of the word "highway," courts within the Commonwealth found that highways with limited public access were indeed "public." In the 2005 case United States v. Spencer, a district court determined that a road inside Ft. Belvoir that had gates and a checkpoint was open to the public and constituted a "highway," even though access was not completely unrestricted twenty-four hours a day. 422 F. Supp. 2d 589 (E.D. Va. 2005). Similarly, in United States v. Scott, the Fourth Circuit held that that the road within the main gate of Ft. Lee was a "state highway" as it was neither completely closed nor barred to general public entry, and could be traversed by members of the public who complied with certain restrictions. 188 Fed. Appx. 213, No. 05-5100, 2006 WL 1867344, at* 1 (4th Cir. July 6, 2006) (per curiam); contra United States v. Smith, 395 F.3d 516, 520 (4th Cir. 2005) (finding that the road leading up to gate of CIA facility in Langley, Virginia was always restricted to the public, and therefore not a "highway") and United States v. Adams, 426 F.3d 730, 732 (4th Cir. 2005) (holding that the road inside Great Dismal Swamp Refuge was closed to all public travel, and thus was not a "highway").

In 2006, the Virginia General Assembly amended the definition of "highway" in the Motor Vehicle Code to include ways and places used for vehicular travel on federal property, so that the present day definition of "highway" in the Code of Virginia includes:

> [T]he entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law enforcement purposes, . . . (ii) the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.

Va. Code §46.2-100.

Given this definition and taken in context with case law, it is clear that the Road in question constitutes a "public highway," despite that fact that is has limited public access and is located on federal property. The amendment's addition of "federal enclaves" to the definition of "highway" can only be read as an expansion of the prior meaning, which already included roads on federal enclaves that permitted access to the general public, like Ft. Lee, (United States v. Scott, supra), and Ft. Belvoir, (United States v. Spencer, supra); thus, even though there may have been some question as to whether the Road could be considered a "public highway" before the 2006 definitional update, it is clear that it is a "public highway" now. The amendment can only be meant to apply to roads that are less accessible and more restricted to the general public; otherwise, this amendment adds nothing to the original highway definition. This is the only interpretation the Court can give to the 2006 amendment so as to give it meaning and not make it superfluous.

To interpret the Commonwealth's definition of "highway" to include less than one-hundred percent public access also accomplishes the purposes of the ACA, 18 U.S.C. §§ 7 and 13. "Courts have uniformly agreed that Congress enacted the ACA to provide a gap-filling criminal code for federal reservations, to conform the law governing federal reservations to the

7

laws of the surrounding jurisdiction, and to give those living within a federal reservation the same protections afforded those living outside the federal reservation." United States v. Daniels, 471 F. Supp. 2d 634, 639-40 (E.D. Va. 2007) (citing United States v. Minger, 976 F.2d 185, 187 (4th Cir. 1992) (citing Kiliz, 694 F.2d at 629)). Appellant's position that a holding in his favor would not undermine the purpose of the ACA is untenable. It is evident that this Court's ruling in the case at bar will serve the purpose of the ACA by ensuring that those individuals who live and work within the Base are afforded the same legal protection against drunk drivers as those individuals who live and work outside of the Base.

### IV.  CONCLUSION

For the foregoing reasons stated herein, the Appellant's conviction is **AFFIRMED**. This Court finds no error in the magistrate judge's findings of fact or conclusions of law.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to counsel for the parties.

**IT IS SO ORDERED.**

                /s/
        Henry Coke Morgan, Jr.
        Senior United States District Judge
        HENRY COKE MORGAN, JR.
        SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 28, 2014